UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JAMES BENNETT, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 3:19-cv-00270 |
| | § | |
| UNITED RENTALS (NORTH AMERICA), INC., | § | |
| | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

JEFFERY V. BROWN, UNITED STATES DISTRICT JUDGE

Pending before the Court is plaintiffs James Bennett and Vera Bennett's Amended Motion to Remand, Dkt. 14. After considering the motion, the response, the reply, the pleadings, and the applicable law, the Court grants the motion.

## I. BACKGROUND

On July 26, 2017, the Bennetts filed the underlying action in the 23rd Judicial District Court of Brazoria County, Texas,[1] against Vernor Material & Equipment Co., Inc. (a Texas corporation), seeking damages from an accident involving a backhoe front loader at the Olin Freeport B Plant in Freeport which resulted in the death of Darrel Bennett. Dkt. 1–1.

---

[1] *James Bennett, Individually and as a Representative of the Estate of Darrel Wayne Bennett and Vera Bennett, Surviving Mother v. Vernor Material Equipment Co., Inc.*; Case No. 92755-CV, in the 23rd Judicial District Court, Brazoria County, Texas.

On August 2, 2018, Plaintiffs filed their First Amended Petition, adding three defendants: CNH Industrial America, LLC (a Delaware company); United Rentals, Inc. (a Delaware corporation); and United Rentals (North America), Inc. (a Delaware corporation with its principal place of business in Connecticut). *See* Dkt. 1–2. On April 8, 2019, the Bennetts nonsuited United Rentals, Inc. Dkt. 1–3. Then, on August 3, 2019, the Bennetts filed a Second Amended Petition, removing CNH and Vernor as parties to the lawsuit. *See* Dkt. 1-4.

On August 9, 2019—over two years after the Bennetts initially filed suit—United Rentals (North America), Inc. (hereafter "Defendant") removed the case to this Court based on diversity jurisdiction. Dkt. 1; *see* 28 U.S.C. §§ 1332, 1441. Defendant contends its notice of removal is timely because Defendant removed this case "as soon as practicable and within thirty (30) days of service of Plaintiffs' Second Amended Petition." Dkt. 1 at 4.

On August 27, 2019, the Bennetts filed the instant Amended Motion to Remand,[2] arguing Defendant's removal is untimely under 28 U.S.C. § 1446(c). That same day, the Court set an expedited briefing schedule because trial in the state court action is set for November 12, 2019. The Bennetts' argument for remanding this case is relatively straight-forward; removal is not permitted more than one year after the commencement of an action unless the plaintiffs acted in bad faith in order to prevent a defendant from removing the action. Therefore, because the Bennetts did not act in bad faith, and because Defendant removed this

---

[2] Plaintiffs' initial Motion to Remand was struck for failure to comply with Judge Hanks' procedures. Dkt. 6.

action more than one year after the Bennetts initiated the state-court action, removal is untimely. Dkt. 14 at 1-2.

On the issue of bad faith, the Bennetts contend that they filed their Second Amended Petition the day after receiving CNH's settlement payment. *Id.* at 3-4. Although not mentioned until their reply briefing, the Bennetts mediated their claims against both CNH and Vernor on June 18, 2019, reaching a settlement agreement that same day. *See* Dkt. 17 at 5. The Bennetts also point towards the complexity of their settlement process with Vernor, which involved a bench trial on the issue of whether the decedent's son was a dependent at the time of his death and, therefore, entitled to workers' compensation death benefits. Dkt. 14 at 4. According to the Bennetts, "a major part of [their] settlement [with Vernor] was a waiver of both past and future subrogation of workers['] compensation carrier's interest." *Id.*

Defendant's response focuses on when the Bennetts settled their claims against Vernor––the party whose presence defeated complete diversity and prohibited removal. Defendant argues that the Bennetts executed and exchanged settlement documents with Vernor on July 18, 2019, citing in support e-mails between the Bennetts' and Vernor's counsel––both dated July 18, 2019––in which counsel for each party represents that a signed settlement release is attached. Dkt. 16 at 3 (citing Defendant's Exs. 6 and 7). Defendant also directs the Court's attention to a letter from Vernor's counsel to the Bennetts' counsel, also dated July 18, 2019, which states that a settlement check is enclosed. *Id.* (citing Ex. 1).

According to the post office's tracking service, the letter was delivered to the Bennetts' counsel's office on July 22, 2019––twelve days before the Bennetts filed their Second Amended Petition. *Id.* (citing Defendant's Ex. 3).

In their reply, the Bennetts elaborate on why they did not dismiss Vernor earlier from the suit. Some of the more salient reasons are: (1) Vernor initially failed to respond to requests for admissions; (2) before amending their petition for the first time, the Bennetts attempted to mediate the dispute with Vernor; (3) the Brazoria County district judge was unavailable for an unspecified amount of time for personal reasons; and (4) the second mediation between with CNH and Vernor (*i.e.,* the successful mediation) did not occur until June 18, 2019––sixteen days before the Bennetts filed their Second Amended Petition. Dkt. 17 at 4-5. Plaintiffs also provide additional information regarding the previously mentioned bench trial concerning whether the decedent's son was a dependent at the time of his death. Notably, the trial occurred months before the Bennetts' second attempt at mediation and resulted in a verdict in the Bennetts' favor that was "still subject to appeal while the [the Bennetts] awaited funding of the settlements from [CNH and Vernor]." *Id.* at 5.

## II. ANALYSIS

### A. Removal Jurisdiction

In an action that has been removed to federal court, a district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). When

considering a motion to remand, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Barker v. Hercules Offshore Inc.*, 713 F.3d 208, 212 (5th Cir. 2013) (quoting *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)). In evaluating a motion to remand, courts should bear in mind that "removal statutes are to be construed strictly against removal and for remand." *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996).

### B. Diversity Jurisdiction

Federal courts have subject-matter jurisdiction and are authorized to entertain causes of action only where a question of federal law is involved or where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. §§ 1331, 1332; *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006). In removed cases where, as here, there is no suggestion that a federal question is involved, subject-matter jurisdiction exists only if there is complete diversity among the parties and the amount in controversy exceeds $75,000.00. *See* 28 U.S.C. § 1332; *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). Complete diversity requires that no plaintiff be a citizen of the same state as any defendant. *Vaillancourt v. PNC Bank Nat'l Ass'n*, 771 F.3d 843, 847 (5th Cir. 2014).

Here, there is no question complete diversity exists between the Bennetts, citizens of Texas, and Defendant, a Delaware corporation with its principal place of business in Connecticut. Further, it is apparent from the pleadings that the

amount in controversy exceeds $75,000.00, which neither party disputes. Therefore, the sole remaining question is the timeliness of Defendant's notice of removal.

### C. Timeliness of Removal

The timeliness of removal is governed by 28 U.S.C. § 1446(b), which provides, in pertinent part:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> ***
>
> Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b). Thus, "if the initial pleading sets forth a claim that triggers the removal clock, the defendant must file notice of removal within thirty days of receiving it." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397–98 (5th Cir. 2013); *see* § 1446(b)(1). If the initial pleading does not trigger removal, however, "a notice of removal must be filed within thirty days of the defendant's receipt of a document from which it may ascertain that the case is, or has become, removable." *Id.* at 398; *see* § 1446(b)(3).

Nevertheless, pursuant to section 1446(c)(1), even if a defendant receives such notice that a case has become removable after the initial pleading, if it has been more than one year since the commencement of the action, the case may not be removed "unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). This rule is commonly called the "one-year bar." *See Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 426 n.8 (5th Cir. 2003).

Before its amendment in 2011, section 1446(c)'s statutory text did not contain the bad-faith exception. *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 293 (5th Cir. 2019), as revised (Aug. 23, 2019) ("Before 2011, § 1446 prohibited defendants . . . from removing a case 'more than one year after commencement of the action'––full stop."). Thus, cases that hinge on there being no exception to section 1446's one-year bar have been superseded. So, too, have cases that rely on the "equitable tolling" exception articulated by the Fifth Circuit in *Tedford*, which provided that section 1446's one-year limitation was subject to exceptions where a strict application of the rule would be inequitable. *Id.* at 294 ("We therefore no longer apply the old § 1446 and the *Tedford* exception we created. We now apply the new § 1446 and the bad-faith exception Congress created."). Although, admittedly, cases applying the equitable-tolling exception may still inform this Court's decision under the bad-faith standard because, in most cases where there was bad-faith conduct on the part of the plaintiff, equity will have demanded tolling the one-year limitation period. *See Solaija Enterprises LLC v. Amguard Ins. Co.*,

CV H-19-0929, 2019 WL 2329832, at *2 (S.D. Tex. May 31, 2019) ("Although the Fifth Circuit has not defined 'bad faith' in the context of § 1446(c)(1), courts within the circuit have opined that the standard for showing bad faith is comparable to the legal standard for establishing equitable tolling under *Tedford*.").

Following the 2011 amendment to section 1446, "'[c]ourts have not settled on a clear standard for determining bad faith' in the [s]ection 1446(c)(1) context." *Jones v. Ramos Trinidad*, 380 F. Supp. 3d 516, 521 (E.D. La. 2019) (citing *Rantz v. Shield Coat, Inc.*, Case No. 17-3338, 2017 WL 3188415, at *5 (E.D. La. July 26, 2017) (quoting *Shorraw v. Bell*, Case No. 15-3998, 2016 WL 3586675, at *5 (D.S.C. July 5, 2016))). Recently, however, the Fifth Circuit provided some guidance in *Hoyt*, stating "[w]hen it comes to bad faith . . . the question is what motivated the plaintiff *in the past*—that is, whether the plaintiff's litigation conduct meant 'to prevent a defendant from removing the action.'" *Hoyt*, 927 F.3d at 923 (emphasis in original). Other courts that have considered the issue have likewise focused on whether a plaintiff's conduct demonstrates manipulation of the removal rules in order to prevent a defendant's removal. *Jones*, 380 F. Supp. 3d at 521 n.50 (collecting cases).

Here, the record simply does not support a finding that the Bennetts acted in bad faith. They originally sued Vernor—the company whose employee operated the backhoe that was involved in the incident resulting in Darrel Bennett's death—on July 26, 2017. Dkt. 1–1. Vernor failed to respond to the Bennetts' requests for admission, and, over the next year, the state trial court conducted four hearings

regarding Vernor's liability, which apparently were complicated by the request-for-admission issue. Dkt. 17 at 4. The Bennetts' efforts were further frustrated through no fault of their own due to the state trial judge's unavailability. *See id.* With the statute of limitation approaching and the requests-for-admissions issue still pending, the Bennetts named as defendants the backhoe's manufacturer and leasing company, CNH and Defendant, respectively. *See id.* at 5; Dkt. 1–2.

Neither party provides much information about what occurred between the filing of the First and Second Amended Petitions, although the Bennetts contend "[e]xtensive discovery was undertaken." Dkt. 17 at 4. Regardless, it was Defendant's burden to show removal was proper. *Barker*, 713 F.3d at 212. And although the Bennetts provide little detail about their bench trial with Vernor, we know that it took place months before the second mediation and resulted in a verdict in the Bennetts' favor, which likely helped facilitate the eventual settlement. Dkt. 17 at 5.

Contrary to Defendant's assertion, it is not the Bennetts who "seek to muddy the waters and further confuse the issue."[3] Rather, it is Defendant's briefing that makes repeated references to the fact that the Bennetts "waited" over "one year after commencing the suit to add [Defendant as a party]" and dismissed Vernor "one year and one day" after filing their First Amended Petition. *See* Dkt. 16 at 1-2, 7-8, 11. But these arguments miss the point; it is the inclusion of Vernor as a defendant that destroyed complete diversity. Even if the Bennetts named

---

[3] Dkt. 16 at 2.

Defendant in their original state-court petition, the case would not have been removable on diversity grounds until a little over two years later, when the Bennetts dropped Vernor as a defendant. In other words, it is inconsequential that the Bennetts "waited" over a year to add Defendant as a party to a lawsuit that would not have been subject to removal in the first place.

Further, the "one year and one day" argument pertains to cases where a plaintiff attempts to circumvent diversity jurisdiction by including a non-diverse defendant, only to dismiss the non-diverse defendant one year *after commencement of the action.* 28 U.S.C. § 1446(c) (emphasis added); *see Tedford*, 327 F.3d at 426-28. Here, the commencement of the action occurred on July 26, 2017, when the Bennetts filed their original petition in state court. *See* Tex. R. Civ. P. 22 (action is "commenced" when petition is filed). Stated differently, the action became removable *only* upon showing the plaintiffs "acted in bad faith in order to prevent a defendant from removing the action" on July 27, 2017—seven days *before* the Bennetts even named diverse parties as defendants in their First Amended Petition. *See* 28 U.S.C. § 1446(c); Dkt 1–2.

Neither party has cited any dispositive case law in their briefing. For their part, the Bennetts rely almost exclusively on cases decided based upon section 1446(c)'s prior absolute ban on removal after one year[4] or remanded due to the defendant's failure to include copies of "all process, pleadings, and orders served

---

[4] *See* Dkt. 17 at 2-4.

upon such defendant" along with their notice of removal, as required by 28 U.S.C. § 1446(a).[5]

Defendant, however, misses the mark, as well, citing cases with easily distinguishable facts, some of which were decided under the former "equitable tolling" exception. In *Tedford*, the Fifth Circuit found that a plaintiff's forum manipulation justified application of the equitable tolling exception where the plaintiff, mere hours after learning that the defendant intended to seek removal, amended her pleading to add a non-diverse defendant, her own doctor, and then signed and post-dated a notice of nonsuit against the doctor. 327 F.3d at 427. The court and the defendants were unaware of the post-dated nonsuit until after the one-year deadline had passed. *Id.* at 428. In *Shriver v. Spiritcom, Inc.*, this Court found equity demanded tolling the one-year limitations period when a plaintiff nonsuited the non-diverse defendant "beyond the eleventh hour," essentially the night before the trial in state court was set to begin. 167 F. Supp. 2d 962, 963-64 (S.D. Tex. 2001) (Kent, J.). Also, the plaintiff in *Shriver* had previously dismissed his initial suit when it was removed to federal court and then re-filed essentially the same suit in state court but added a non-diverse defendant. *Id.* at 962-63. In *Lawson v. Parker Hannifin Corp.*, the court found that a plaintiff engaged in bad-faith forum manipulation when the plaintiff failed to serve the defendant until seven months after filing suit, did not move for a default judgment when the defendant failed to appear or answer the plaintiff's petition, and never sought

---

[5] *See* Dkt. 14 at 4-5.

discovery against the defendant. 4:13-cv-923-O, 2014 WL 1158880, at *4-6 (N.D. Tex. Mar. 20, 2014). Finally, in *Hoyt*, the Fifth Circuit found the plaintiffs' "half-hearted" pursuit of their claims against a non-diverse defendant, only to dismiss the non-diverse defendant "for free" one year and two days after filing suit, supported the district court's finding that the plaintiffs had acted in bad faith. 927 F.3d at 292-293. Notably, in contrast to the case at bar, both the district court and Fifth Circuit found it suspicious that the plaintiffs were unable to provide an explanation as to why they waited until just two days after the one-year deadline to dismiss the non-diverse defendant. *Id.* at 293.

Here, Defendant cannot point to any of the clearly egregious types of facts detailed in *Tedford*, *Shriver*, *Lawson*, or *Hoyt*. To the contrary, the settlement suggests the Bennetts' claims against Vernor were meritorious. *Cf., Bryson v. Wells Fargo Bank*, N.A., 1:16-CV-28, 2016 WL 1305846, at *6 (E.D. Tex. Mar. 31, 2016). Moreover, the twelve-day lag between the Bennetts' settling their claims against CNH and Vernor and the Bennetts' filing their Second Amended Petition is irrelevant because, as mentioned above, this case was not removable absent a showing of bad faith the very second the Bennetts added diverse defendants to this lawsuit.

* * *

An evaluation of the relevant facts and controlling law reveals that Defendant's notice of removal was untimely. Therefore, this case was improvidently removed, and remand is required. The Court grants the Bennetts'

Amended Motion to Remand and remands this case to the 23rd Judicial District Court of Brazoria County, Texas. The District Clerk is directed to transmit the file to the District Clerk of Brazoria County, Texas.

Signed at Galveston, Texas on this, the 18th day of October, 2019.

_____
JEFFERY VINCENT BROWN
UNITED STATES DISTRICT JUDGE